## STATE v. WARREN DALE.[1]

May 29, 1924.

No. 24,039.

**Conviction for grand larceny sustained.**
1. There was legal proof of defendant's guilt.

**Value of currency.**
2. The evidence justified the jury in finding that the currency which the prosecuting witness testified was taken was money of the United States and of value.

**Defendant questioned as to cross-examination.**
3. A defendant taking the witness stand may be asked, on cross-examination, if he has been previously convicted of crime.

Defendant was indicted by the grand jury of Martin county charged with the crime of grand larceny in the second degree, tried in the district court for that county before Dean, J., and a jury which found him guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Paul C. Cooper*, for appellant.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Deputy Attorney General, and *John W. Lovell*, County Attorney, for respondent.

HOLT, J.

Defendant was found guilty of grand larceny in the second degree, and appeals from the order denying a new trial.

The indictment charged that in the daytime defendant from the till in the office of a filling station, stole $54, lawful money of the United States, the property of one N. C. Harber. The chief contention is that guilt was not established by sufficient legal proof. It appears that on the southeast corner of a block in the

[1]Reported in 199 N. W. 99.

city of Fairmont, there is one of the modern gasolene filling stations, operated by N. C. Harber. The building is set back from the corner and fronts a wide driveway running diagonally from the intersecting streets. The front door of the office opens onto the driveway. North of the office is an oiling rack.

The state's proof was that about 6 p. m. May 27, 1923, one Tulp and defendant drove an automobile upon the rack; that Tulp went to the office door and asked Harber to come out and look at the oil in his car; that when Harber came out to do so, he did not see defendant; that, after Harber looked at the oil, Tulp bought a quart which Harber procured from a place in front of the office, came back, poured it in, and was paid 25 cents therefor; that when Harber went to put this money in the till, he found $54 in currency missing; that about as Tulp drove away, Harber's nephew came and was directed to follow Tulp and get his car number; that this nephew so did, and noticed that defendant was waiting for Tulp, got into Tulp's car, and the two drove away. They were later apprehended at Elmore, a small place some distance from Fairmont, and brought back to the latter place. Tulp as a witness for the state, testified, in substance, that when he told defendant that he needed a quart of oil, dependant requested him to drive to this station up onto the rack and to ask the man in charge to look at the oil; that he did so drive up and both got out of the car; that he, Tulp, then went to the office, as testified to by Harber, got the oil, filled the radiator with water, and drove off; that he did not see defendant after they got out of the car at the rack until, as he drove away from the station, he saw him down the street motioning him, Tulp, to drive around the corner; that defendant got into the car and said: "You got some cheap oil; I got $6 out of the station while you were getting the oil"; that defendant showed him the money and offered $3 to Tulp which was declined. A woman, living in the house directly west of the filling station, indifferently identified defendant as the person whom she saw emerging from the station grounds and going across the street, where he apparently waited for some one.

Of course, if Tulp's testimony is true, there could be, as the trial court stated to the jury, very little question about the guilt of defendant. But it is earnestly contended that Tulp was an accomplice, and therefore it was necessary to have other testimony to connect defendant with the crime. It does not appear, as a matter of law, that Tulp was an accomplice. It is true, the two men being in company, the driving upon the rack, and the requesting the proprietor to look at the oil strongly suggest a joint scheme to give defendant an opportunity to pilfer. Furthermore, Tulp admitted that he paid back the amount Harber claimed to have been stolen, and the prosecution was never pressed against him. But notwithstanding all this, it was for the jury to say whether or not Tulp's testimony was true that he knew nothing of defendant's purpose in directing Tulp to drive the car onto the rack and call for an inspection of the oil; that the first he knew of the crime was after it was done, when he refused any share in its proceeds; and it could conclude that Tulp paid Harber the $54, not because he either had stolen or assisted in stealing the money, but because he realized that circumstances were against him, and he lacked moral courage to risk a prosecution if it could be avoided by any means, even though reflecting on his honesty.

It is further asserted that there is no proof that what was taken from the till was of any value whatever. Harber testified that $54 in currency was taken. It has been held that when applied to money, the words "amount" and "value" are synonymous. Bartley v. State, 53 Neb. 310. Defendant's counsel concedes that if there had been any testimony that the currency was lawful money of the United States, value would have been adequately proved. It seems to us the testimony in the light of the situation, cannot be given any other meaning than as referring to good and lawful money of this country—money current here. Such money has value; and, if of any value whatever, the theft thereof from the office of the filling station in the daytime constituted grand larceny in the second degree. (Section 8875, G. S. 1913).

Defendant took the witness stand. On the cross-examination it was proper to elicit from him that he had been convicted of crime

previously. G. S. 1913, § 8504; State v. Curtis, 39 Minn. 357, 40 N. W. 263; State v. Price, 135 Minn. 159, 160 N. W. 677.

A perusal of this record engenders no doubt concerning the justice of the verdict, and had the prosecution used a little more care in the examination of the state's witnesses this appeal never would have been taken.

The order is affirmed.